COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges McCullough and Huff
Argued at Alexandria, Virginia


JUSTIN GERENSKY-GREENE

MEMORANDUM OPINION* BY
v.      Record No. 1801-11-4                    JUDGE GLEN A. HUFF
                                                JUNE 19, 2012
DIMITER GERENSKY


FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
William T. Newman, Jr., Judge[1]

Daniel Rodgers (Richard Roesel, on briefs), for appellant.

Raymond B. Benzinger (Law Office of Raymond Benzinger, P.C.,
on brief), for appellee.


Justin Gerensky-Greene ("appellant") appeals the Circuit Court of Arlington County's

("trial court") June 27, 2011 order granting Dimiter Gerensky's ("appellee") nonsuit, and the

trial court's August 12, 2011 orders denying appellant's motion for sanctions and granting

appellee's motion for his medical records to be held in the trial court's chambers rather than in

the trial court's public records. On appeal, appellant argues the trial court 1) erred when it

granted appellee's nonsuit of his motion to modify the custody and visitation provisions of the

final decree of divorce; 2) abused its discretion by denying appellant's motion for sanctions

against appellee and his first counsel, and erred by failing to explain why sanctions were not

granted; and 3) erred by ordering the return of all appellee's medical records to chambers and

permanently removing them from the trial court's public files.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Judge William T. Newman, Jr., presided over the trial court proceedings and the June
27, 2011 hearing. Judge Joanne Alper presided over the May 25, 2011 hearing.

## I.  BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003) (citations omitted).  So viewed, the evidence is as follows.

On November 12, 2008, the trial court entered the final decree of divorce, which incorporated the property settlement agreement between the parties dated July 5, 2007, granting appellant a divorce *a vinculo matrimonii* from appellee.  The property settlement agreement provided that appellant would have sole legal and physical custody of the parties' two children, and appellee would have "visitation rights on Sundays between 9 a.m. and 3 p.m., which shall be supervised at any time [appellant] deems supervision is necessary."

On April 15, 2009, appellee filed a motion to modify custody and visitation.  On October 6, 2009, the trial court entered a protective order ("protective order") for Dr. Elena Mustakova-Possardt ("Dr. Mustakova") to produce to the trial court "her records, notes[,] and other documents relative to psychotherapeutic therapy and counseling provided to [appellee], including history, notes[,] and records of communication with both [appellant] and [appellee] . . . ."  Specifically, the protective order provided that the documents would be produced to the trial court

> for an [i]n [c]amera review by the [trial c]ourt and retention by the
> [trial c]ourt of those portions it deems are not relevant to the
> proceedings and the redacted versions will be available for review
> in chambers by [c]ounsel of [r]ecord only, and not by [appellant]
> or the [appellee], and no copies may be made for any purpose and
> the information contained therein shall not be disclosed to the

public or the parties to this action and all such information shall remain under seal.

Appellant's counsel endorsed the protective order as "[s]een and [a]greed."

On November 2, 2009, appellee filed a motion for nonsuit. On November 5, 2009, appellant filed a motion for attorney fees and sanctions against appellee and his counsel. On January 8, 2010, the trial court denied appellee's motion for nonsuit after "having determined by letter ruling that . . . Code . . . § 8.01-380 precludes a nonsuit under the circumstances of this case."[2]

Dr. Mustakova was deposed on May 20 and 23, 2011, during which Dr. Mustakova indicated that appellee had waived his doctor-patient privilege with regard to appellee's communications with her for purposes of her testimony. On May 23, 2011, the trial court entered another protective order permitting counsel to check out copies of the documents held *in camera* under the first protective order for the sole purpose of using them in the resumed May 23rd deposition of Dr. Mustakova and that the documents were to be returned to chambers following the deposition. During the two depositions, appellant's counsel referred to many of the documents that were held *in camera* in chambers, and even appended copies of the documents to the deposition, which the court reporter submitted to appellee's counsel before the hearing on May 25, 2011 to be returned to the trial court's chambers pursuant to the protective order.

The trial court heard arguments on May 25, 2011 on appellee's motion to modify custody and visitation, and on appellant's motion to dismiss on grounds of spoliation of evidence and

---

[2] Appellee appealed the denial of the first nonsuit to this Court on January 25, 2010. This Court, however, dismissed the appeal without prejudice on June 10, 2010, holding that the trial court's ruling was not a final decision and did not "involve an injunction or adjudicate the principles of a cause." Gerensky-Greene v. Gerensky-Greene, No. 0183-10-4 (Va. Ct. App. June 10, 2010). This Court then held that it was without jurisdiction to entertain the appeal after noting that the order was interlocutory and did not address the merits of the case. Id.

appellee's incompetence to testify and preclusive admissions. At the hearing, appellee again moved for a voluntary nonsuit. The trial court granted the nonsuit as a matter of law without prejudice, continued the case to address appellant's motion for sanctions, and entered the nonsuit order on June 27, 2011. In the order granting the nonsuit, the trial court specifically noted that "the [appellee's] action is hereby non-suited without prejudice; this order does not preclude any hearing on any pending motion for sanctions or similar relief; said motion should be heard by Judge Newman; . . . ." The trial court concluded the order with "AND THIS CAUSE IS ~~FINAL~~ CONTINUED." The trial court struck through the word "final" twice and hand wrote in "continued."

On June 8, 2011, appellee filed a motion for an order requiring all parties and their counsel to return all copies of the medical records filed in the trial court's chambers that were improperly removed and copied. On June 27, 2011, the trial court heard arguments on appellant's motion for sanctions filed on November 5, 2009, and appellee's June 8, 2011 motion for an order requiring the medical records to be returned to the trial court's chambers.

The trial court denied appellee's motion for sanctions stating,

> I do[ ]n[o]t doubt for a minute that there were things here that were probably not appropriate, should not have been argued, and should[ ]n[o]t have been filed. But I appreciate what you are asking the [trial c]ourt to do, but – it[ i]s questionable, but I am not going to impose a sanction at this time.

The trial court then granted appellee's motion requiring the medical records to be returned to the trial court's chambers and any copies to be returned or destroyed pursuant to the protective order that was "not rescinded or vacated." Orders reflecting the trial court's ruling on the two motions were entered on August 12, 2011 with each indicating that the cause is final. Appellant's counsel did not endorse the August 12, 2011 orders, nor did appellant's counsel object to either order or file a motion for reconsideration. This appeal followed.

II.  ANALYSIS

A.  Motion for Nonsuit

Appellant first contends that the trial court erred in granting a post-judgment motion for nonsuit since applicable law precludes a post-judgment nonsuit of a motion to modify custody or visitation.  Specifically, appellant asserts the trial court misapplied the nonsuit statute in this case by granting a nonsuit where the parties already had fully litigated the matter and had a final judgment entered regarding custody and visitation of the children.

Appellee, however, asserts that the trial court did not err in granting the motion for nonsuit since a petition to "revise and alter" a decree of divorce, pursuant to Code § 20-108, is a "cause of action or claim" that is subject to a nonsuit.  Code § 8.01-380.

Whether the trial court erred in granting a voluntary motion for nonsuit "presents a question of law and as such is reviewed on appeal under a de novo standard."  Transcon. Ins. Co. v. RBMW, Inc., 262 Va. 502, 514, 551 S.E.2d 313, 319 (2001).  "[A] nonsuit order is not a final judgment for appeal purposes unless a dispute exists whether the trial court properly granted the motion for nonsuit."  James v. James, 263 Va. 474, 480, 562 S.E.2d 133, 137 (2002) (citing Swann v. Marks, 252 Va. 181, 184-85, 476 S.E.2d 170, 172 (1996); McManama v. Plunk, 250 Va. 27, 32, 458 S.E.2d 759, 761 (1995); Mallory v. Taylor, 90 Va. 348, 349, 18 S.E. 438, 439 (1893)).  "[T]he nonsuit statute contains a number of limitations on a party's absolute right to take a voluntary nonsuit, and if a nonsuit is allowed in violation of those limitations, appellate review must be available to correct the error."  Id. at 481, 562 S.E.2d at 137 (citing Wells v. Lorcom House Condo. Council, 237 Va. 247, 251, 377 S.E.2d 381, 383 (1989)).

Code § 8.01-380(A) provides, in relevant part, "[a] party shall not be allowed to suffer a nonsuit as to any cause of action or claim, or any other party to the proceeding, unless he does so before a motion to strike the evidence has been sustained or before the jury retires from the bar

or before the action has been submitted to the court for decision." "[F]or an action to be 'submitted to the court,' it is 'necessary for the parties, by counsel, to have *both* yielded the issues to the court for consideration and decision.'" Transcon. Ins. Co., 262 Va. at 514, 551 S.E.2d at 319 (quoting Moore v. Moore, 218 Va. 790, 795, 240 S.E.2d 535, 538 (1978)).

> A plaintiff has an absolute right under Code § 8.01-380 to one nonsuit. Nash v. Jewell, 227 Va. 230, 237, 315 S.E.2d 825, 829 (1984). "The election is his and if he insists upon taking the nonsuit within the limitations imposed by the statute, neither the trial court nor opposing counsel can prevent him from doing so." Id. Furthermore, when a court enters a nonsuit order, the case becomes "concluded as to all claims and parties," and "nothing remains to be done." Dalloul v. Agbey, 255 Va. 511, 515, 499 S.E.2d 279, 282 (1998).

James, 263 Va. at 481, 562 S.E.2d at 137. Put more precisely, "the effect of husband exercising his right, pursuant to Code § 8.01-380, to voluntarily nonsuit the . . . action was to 'leave[] the situation as if the suit had never been filed.'" Ipsen v. Moxley, 49 Va. App. 555, 565, 642 S.E.2d 798, 802-03 (2007) (quoting R. P. Davis, Annotation, Effect of Nonsuit, Dismissal, or Discontinuance of Action on Previous Orders, 11 A.L.R.2d 1407 at *3 (2004)).

In the present case, the question of whether a party is entitled to a nonsuit turns on whether a motion to modify custody or visitation constitutes a new "cause of action or claim" separate from the initial divorce proceedings that resulted in the final decree of divorce. The Supreme Court has defined a "cause of action" as "a set of operative facts which, under the substantive law, may give rise to a right of action." Roller v. Basic Constr. Co., 238 Va. 321, 327, 384 S.E.2d 323, 326 (1989). "A right of action belongs to some definite person; it is the remedial right accorded that person to enforce a cause of action. It arises only when that person's rights are infringed." Id.

The Supreme Court has also defined the term "claim" as "'an authoritative or challenging request,' 'a demand of a right or supposed right,' or 'a calling on another for something due or

supposed to be due.'" Stamie E. Lyttle Co. v. County of Hanover, 231 Va. 21, 26 n.4, 341

S.E.2d 174, 178 n.4 (1986) (quoting Webster's Third New International Dictionary 414 (1981));

see also Black's Law Dictionary 281 (9th ed. 2009) (defining the term "claim" as "[t]he

aggregate of operative facts giving rise to a right enforceable by a court," "[t]he assertion of an

existing right").

Based on these definitions, actions to modify custody and visitation brought under Code

§ 20-108 constitute a "cause of action" or a "claim." Code § 20-108 provides, in pertinent part,

that

> [t]he court may, from time to time after decreeing as provided in
> § 20-107.2, on petition of either of the parents, or on its own
> motion or upon petition of any probation officer or the Department
> of Social Services, which petition shall set forth the reasons for the
> relief sought, revise and alter such decree concerning the care,
> custody, and maintenance of the children and make a new decree
> concerning the same, as the circumstances of the parents and the
> benefit of the children may require.

The specific facts of this case involve a parent seeking modification of the visitation and

custody of his children under Code § 20-108 – an action involving a statutory right personal to

the parent. See Anonymous C v. Anonymous B, No. 2232-09-2, 2011 Va. App. LEXIS 14, at

*10 n.5 (Va. Ct. App. Jan. 11, 2011) (noting that "a custody action is based on the movant's

rights as a parent; such a claim is personal to the parent, not the child"). Thus, a right of action

existed. In addition, a claim brought by a parent under Code § 20-108 includes a statutory right

to seek a modification of the visitation and custody of his children that is enforceable by the

court. See Mattingly v. McCrystal, Record No. 0424-03-4, 2004 Va. App. LEXIS 174, at *5

(Va. Ct. App. Apr. 13, 2004) (noting that by filing a motion to modify custody, wife "was merely

exercising her statutory right to seek a modification of the present custody arrangement").

Therefore, contrary to appellant's assertion, the trial court had not resolved the cause of

action or claim that was before it when appellee moved for a nonsuit nor had it been submitted to

the trial court for decision as the parties had not concluded presenting oral arguments on the issue.  See Transcon. Ins. Co., 262 Va. at 514, 551 S.E.2d at 319 (noting that an action can be submitted to the court "'either as the result of oral or written argument, formal notice and motion, or by tendering a jointly endorsed sketch for a decree,'" Moore, 218 Va. at 795-96, 240 S.E.2d at 538, while also recognizing that in setting forth this list in Moore, the Supreme Court "'made no attempt to delineate every possible situation when an action would or would not be 'submitted' to the court for decision under the nonsuit statute,'" City of Hopewell v. Cogar, 237 Va. 264, 268, 377 S.E.2d 385, 387-88 (1989)).  In the present case, appellee filed an action seeking to modify the custody and visitation previously entered.  Thus, when the trial court granted the nonsuit, it did not revert the case back to the time prior to the final decree of divorce entered on November 12, 2008.  Instead, it had the effect of leaving the situation as if the cause of action and claim – appellee's motion to modify custody and visitation – had never been filed.  Based on the foregoing, this Court holds that the trial court did not err in granting appellee's motion for nonsuit.

## B.  Sanctions & Medical Records

### 1.  Trial Court's Jurisdiction

While neither party raised the issue of whether the trial court had jurisdiction over the case at the time it entered the August 12, 2011 orders, this Court can raise "the lack of subject matter jurisdiction . . . at any time in the proceedings, even for the first time on appeal by the court *sua sponte*."  Morrison v. Bestler, 239 Va. 166, 170, 387 S.E.2d 753, 756 (1990) (citing Thacker v. Hubard, 122 Va. 379, 386, 94 S.E. 929, 930 (1918)).[3]  "The question of whether a

_____

[3] In Morrison, the Supreme Court stated that

> [t]he term jurisdiction embraces several concepts including subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or

particular order is a final judgment is a question of law that we review *de novo*." Carrithers v.

Harrah, 60 Va. App. 69, 73, 723 S.E.2d 638, 639 (2012).

Rule 1:1 provides, in pertinent part, that "[a]ll final judgments, orders, and decrees,

irrespective of terms of court, shall remain under the control of the trial court and subject to be

---

> controversies; territorial jurisdiction, that is, authority over
> persons, things, or occurrences located in a defined geographic
> area; notice jurisdiction, or effective notice to a party or if the
> proceeding is in rem seizure of a res; and "the other conditions of
> fact must exist which are demanded by the unwritten or statute law
> as the prerequisites of the authority of the court to proceed to
> judgment or decree."

239 Va. at 169, 387 S.E.2d at 755 (quoting Farant Investment Corp. v. Francis, 138 Va. 417, 427-28, 122 S.E. 141, 144 (1924)). After noting that the lack of subject matter jurisdiction can be raised at any time, the Supreme Court further recognized that "[i]n contrast, defects in the other jurisdictional elements generally will be considered waived unless raised in the pleadings filed with the trial court and properly preserved on appeal." Id. (citing Rule 5:25).

In Smith v. Commonwealth, 281 Va. 464, 467, 706 S.E.2d 889, 891 (2011) (quoting Ghameshlouy v. Commonwealth, 279 Va. 379, 388, 689 S.E.2d 698, 702 (2010)), the Supreme Court delved deeper into the use of the term "jurisdiction," and noted that "[t]he term jurisdiction is 'a word of many, too many, meanings.'" The Supreme Court then provided the following clarification regarding jurisdiction:

> [s]ubject matter jurisdiction standing alone is, however, only the
> "potential" jurisdiction of a court over the subject matter. The
> court acquires the "active" jurisdiction to adjudicate a matter only
> when certain additional elements are present. Ghameshlouy, 279
> Va. at 388-89, 689 S.E.2d at 702-03. Some of the other elements
> governing the ability of a court to exercise its subject matter
> jurisdiction in a particular case are contained in the Rules of the
> Supreme Court of Virginia prescribed and adopted by this Court
> pursuant to Code § 8.01-3.

Smith, 281 Va. at 467-68, 706 S.E.2d at 892. "Elements required to ripen the appellate court's potential jurisdiction into active jurisdiction are elements that must be applicable in every appeal; they cannot be selectively applied depending on the issues presented in the appeal." Id. at 468-69, 706 S.E.2d at 892.

In the present case, Rule 1:1, which is applicable in every case, is a mandatory procedural rule that delineates when the trial court's ability to exercise its subject matter jurisdiction in a particular case ceases such that it loses its "active" jurisdiction twenty-one days after entry of the final order. Thus, Rule 1:1 defeats the trial court's ability to exercise its "active" jurisdiction over a case and enter a valid decree or disposition beyond the time limit unless an exception applies or the trial court specifically retains jurisdiction over the case.

modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."

"[T]he provisions of Rule 1:1 are mandatory in order to assure the certainty and stability that the finality of judgments brings." Super Fresh Foods Mkts. of Va., Inc. v. Ruffin, 263 Va. 555, 563, 561 S.E.2d 734, 738 (2002). The Supreme Court recently noted that

> "an order granting a nonsuit should be subject to the provisions of Rule 1:1," and, as such, "like all final judgments, [the nonsuit order] remained under the control and ['active'] jurisdiction of the trial court for 21 days after the date of entry." [Williamsburg Peking Corp. v. Kong, 270 Va. 350,] 354, 619 S.E.2d [100,] 102 [(2005)] (internal quotation marks and citations omitted). Recognizing that a motion for sanctions "has no bearing on the facts giving rise to a right to seek judicial remedy," we concluded that "the entry of a nonsuit order does not conclude a case as to any pending motion for sanctions." Id. Accordingly, we stated that under the facts of the case, the circuit court was "empowered to consider the sanctions motion either before the entry of the nonsuit order or within 21 days after the entry of the nonsuit order." Id. at 355, 619 S.E.2d at 102-03.

Johnson v. Woodard, 281 Va. 403, 408-09, 707 S.E.2d 325, 328 (2011).

However, "a circuit court may avoid the application of the 21 day time period in Rule 1:1 by including specific language stating that the court is retaining ['active'] jurisdiction to address matters still pending before the court." Id. at 409-10, 707 S.E.2d at 328 (citing Super Fresh, 263 Va. at 561, 561 S.E.2d at 737). Yet, "'[n]either the filing of post-trial or post-judgment motions, nor the trial court's taking such motions under consideration, *nor the pendency of such motions on the twenty-first day after final judgment*, is sufficient to toll or extend the running of the 21-day period prescribed by Rule 1:1.'" City of Suffolk v. Lummis Gin Co., 278 Va. 270, 277, 683 S.E.2d 549, 552 (2009) (quoting James, 263 Va. at 482-83, 562 S.E.2d at 138). In addition, "[a] mere indication that the trial court *intends* to rule on pending motions is insufficient to negate the finality of an order rendering a final judgment on the merits of a case." Carrithers, 60 Va. App. at 75, 723 S.E.2d at 640-41 (citing City of Suffolk, 278 Va. at 277, 683 S.E.2d at 552-53).

- 10 -

"'Thus, when a trial court enters an order, or decree, in which a judgment is rendered for a party, unless that order expressly provides that the court retains ["active"] jurisdiction to reconsider the judgment or to address other matters still pending in the action before it, the order renders a final judgment and the twenty-one day time period prescribed by Rule 1:1 begins to run.'" Johnson, 281 Va. at 409, 707 S.E.2d at 328 (quoting Super Fresh, 263 Va. at 561, 561 S.E.2d at 737). If, however, "a judgment . . . has been properly vacated or suspended under Rule 1:1[, it] does not become a final judgment thereafter without a subsequent order confirming it as originally entered or as modified." Super Fresh, 263 Va. at 564, 561 S.E.2d at 739.

In this case, the trial court entered the order granting nonsuit of the motion for custody and visitation on June 27, 2011. The order indicated that "the [appellee's] action is hereby non-suited without prejudice; this order does not preclude any hearing on any pending motion for sanctions or similar relief; said motion should be heard by Judge Newman; . . . ." The trial court then concluded the order by striking through the word "final" and stating "and this cause is continued." It is evident from the context in which the trial court utilized the concluding phrase and strike-out while at the same time noting the order did not preclude a hearing on any pending motion on sanctions or similar relief that the trial court was not merely intending to address issues in the future. Rather, the trial court was actually expressly declaring the nonsuit order to not be a final order, and was documenting the trial court's intent to retain "active" jurisdiction to address pending matters. Thus, the trial court was forestalling the commencement of the twenty-one-day time period of Rule 1:1.

Accordingly, this Court holds that the trial court did not lack "active" jurisdiction to consider the pending motions because it properly continued the trial court's "active" jurisdiction by the language and markings employed in the June 27, 2011 nonsuit order. Therefore, the

commencement of the twenty-one-day time period provided for in Rule 1:1 was suspended until the final order was entered on August 12, 2011.

## 2. Procedural Default

Appellant asserts that the trial court abused its discretion by denying appellant's motion for sanctions against appellee and his first counsel, and erred by failing to explain why sanctions were not granted. Appellant also asserts that the trial court erred by ordering the return of all appellee's medical records to chambers and permanently removing them from the trial court's public files.

Appellee contends, however, that appellant failed to preserve her second and third assignments of error on appeal on the basis that appellant failed to object to the trial court's decision, and in fact, did not even sign the orders or indicate her objections to them. In response, appellant merely notes that her counsel did not sign the orders, but argues that she preserved the issues through her briefs and oral arguments on the issues.

Rule 5A:18 provides, in relevant part, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, . . . ." "[T]he main purpose of the rule is to ensure the trial court can 'consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials.'" Kovalaske v. Commonwealth, 56 Va. App. 224, 230, 692 S.E.2d 641, 645 (2010) (quoting Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992)). "[N]either the Code nor Rules of Court mandate a specific procedure to preserve for appeal an issue objected to in the trial court. A simple statement that embodies the objection and reason therefore suffices." Lee v. Lee, 12 Va. App. 512, 515, 404 S.E.2d 736, 738 (1991).

In this case, appellant did not object at the June 27, 2011 hearing to the trial court's rulings on the motion for sanctions and the motion regarding the medical records. Further,

appellant raised no objections to the trial court's August 12, 2011 orders. Accordingly, Rule 5A:18 bars this Court's consideration of the issues on appeal as appellant waived them through her failure to object.

## C. Attorney's Fees

Both parties seek an award of attorney's fees upon appeal.

> "The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment."

Rice v. Rice, 49 Va. App. 192, 204, 638 S.E.2d 702, 708 (2006) (quoting O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996)). After considering the record, this Court concludes "the litigation addressed appropriate and substantial issues and that neither party generated unnecessary delay or expense in pursuit of its interests." Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004). Accordingly, this Court denies each party's request for attorney's fees on appeal.

## III. CONCLUSION

Based on the foregoing, this Court holds that the trial court did not err in granting the voluntary nonsuit, denying the motion for sanctions, and granting the motion for the return of the medical records and affirms the judgment of the trial court. Further, this Court denies each party's request for attorney's fees on appeal.

Affirmed.